```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
                                        :
LORRETTA CUMMINGS,                      :
                                        :
    plaintiff,                          :
                                        :
v.                                      :   CASE NO. 3:19cv01440 (RAR)
                                        :
ANDREW SAUL,                            :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
    defendant.                          :
```

## RULING ON PENDING MOTIONS

Lorretta Cummings ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated June 3, 2019. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. #12-1) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #15-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand, is GRANTED and the Commissioner's motion to affirm is DENIED.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even when there also may be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[2]

## PROCEDURAL HISTORY

On July 29, 2013, plaintiff filed for Title II disability insurance benefits. Her application was initially denied on December 11, 2013 and again on reconsideration on March 26, 2014. Plaintiff filed for a hearing on May 1, 2014, which was held on June 8, 2015 before Administrative Law Judge ("ALJ") Matthew Kuperstein. The ALJ issued a decision on August 28, 2015 finding that plaintiff was not disabled within the meaning of the Social Security Act. On June 16, 2016, plaintiff requested a

---

Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).
[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

review by the Review Appeals Council, which affirmed her denial. Plaintiff then appealed to this Court.

In a written decision on September 30, 2017, this Court found that the ALJ had failed to fulfill his "obligation to further develop the record and investigate the inconsistency" that he noted between plaintiff's treating physician, Dr. Sanjeev Rao's, medical source statement and treatment notes. (R. 1415); Cummings v. Berryhill, No. 3:16cv01372 (RAR), 2017 WL 4337103, at *4 (D. Conn. Sept. 30, 2017). The case was then remanded to the Appeals Council, which in turn remanded to the ALJ.

Pursuant to this Court's opinion, the ALJ sent two requests to Dr. Rao, on March 16, 2018 and February 22, 2019, asking him to confirm that he completed the medical source statement and to:

> identify the particular medical or clinical findings (ie., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support[ed] [his] responses for each of the Work-Related Activities that [he] assessed; why the findings support each of [his] assessments; and the period of time during which this level of ability has or will apply for Ms. Cummings.

(R. 1573, 2438.) On March 8, 2019, Dr. Rao faxed a letter to the ALJ giving his opinion that "[d]ue to [plaintiff's] current & ongoing comorbid conditions, she is in no position for any form of physical work from pain,

5

neuropathy pain & side effects from over 20 medications (see list)" and included plaintiff's most recent treatment notes and current medications. (R. 2364-2436.)

During the pendency of the ALJ's requests to Dr. Rao, a new hearing was held on February 14, 2019. On June 3, 2019, the ALJ again denied plaintiff's claim. On September 13, 2019, plaintiff timely appealed to this Court. (Dkt. 1.)

On February 13, 2020, plaintiff filed a statement of facts outlining the medical and procedural chronology along with her motion to reverse or remand the ALJ's decision. (Dkt. #12-2.) On May 13, 2020, the Commissioner responded by adopting some of the facts stated by plaintiff but provided a detailed supplementation of plaintiff's medical records along with a motion to affirm the decision. (Dkt. #15-2.) The Court generally adopts the facts as set forth by plaintiff and supplemented by the Commissioner. While utilizing these facts, the Court will further supplement throughout the discussion as necessary and assumes some familiarity with its prior opinion in this matter. (R. 1405-21); Cummings v. Berryhill, No. 3:16cv01372 (RAR), 2017 WL 4337103 (D. Conn. Sept. 30, 2017).

**DISCUSSION**

While there is some difference in how the parties frame the issues, both sides focus on the residual functional capacity ("RFC") determination and whether it is supported by substantial evidence. Implicit in those issues are questions about the sufficiency of the ALJ's compliance with this Court's 2017 opinion instructing him to further develop the record and investigate the inconsistency between the treating physician's medical source statement and the treatment notes. The Court will address these questions first, as they are dispositive.

**I.   The ALJ's Duty to Develop the Record**

The Second Circuit has made clear that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). But before an ALJ can determine what weight to give the treating physician's opinion, the record must be complete. *See* Alford v. Saul, 417 F. Supp. 3d 125, 140 (D. Conn. 2019)("Whether the administrative record has been

adequately developed is 'a threshold question' and, accordingly, before determining whether the ALJ's decision is supported by substantial evidence, 'the court must first be satisfied that the ALJ provided plaintiff with "a full hearing under the Secretary's regulations" and also fully and completely developed the administrative record.'") (quoting Craig v. Comm'r of Social Sec., 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) and Scott v. Astrue, No. 09-cv-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)).

The ALJ has a duty to "make 'every reasonable effort' to fully and fairly develop the record, taking into account the circumstances of the case." Harris v. Berryhill, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) (citing Carr v. Comm'r of Social Sec., 16 Civ. 5877 (VSB)(JCF), 2017 WL 1957044, at *10 (S.D.N.Y. May 11, 2017)). "This duty to develop the record exists even when the claimant is represented by counsel." Phelps v. Colvin, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). The ALJ's duty includes "at least an initial request for medical evidence and a follow-up." Alford v. Saul, 417 F. Supp. at 141 (citing 20 C.F.R. § 404.1512(b)(1)(i)). There is a timeframe for this follow-up: "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one

8

follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(b)(1)(i). The ALJ's duty to develop the record can go so far as to order more consultative examinations for a claimant, and even issue subpoenas to obtain medical records. *See* id. at § 404.1512(b)(2); Acosta v. Barnhart, No. 99Civ.1355(LAP)(AJP), 2003 WL 1877228, at *11 (S.D.N.Y. Apr. 10, 2003) (noting that "the ALJ is authorized to issue subpoenas requiring the production of any evidence relating to a matter under consideration" (citing 42 U.S.C. § 405(d) and Treadwell v. Schweiker, 698 F.2d 137, 141 (2d Cir. 1983))).

The Court finds separate duties in this record: first, the duty noted in the 2017 opinion to try to obtain the basis for Dr. Rao's medical source statement; second, the duty to clarify the record based upon the information that Dr. Rao presented in his letter. Each will be addressed in turn.

      a. Duty to Develop the Record Based upon the 2017 Opinion

There is almost a year between the first and second letters.[3] (R. 1573, 2365, 2438.) There is no explanation provided for the almost year-long delay; the Commissioner does not

---

[3] It is unclear to the Court whether the February 2019 letter was a new initial request or a follow up. The two letters are identical; the February 2019 letter does not reference the March 2018 letter at all. But for the purpose of the Court's analysis, the categorization of the second letter is irrelevant.

mention the February 22, 2019 letter in his brief. (Def.'s Br. 7.) During the second hearing, the ALJ noted that Dr. Rao had not responded, but did not address the lack of follow up:

> [N]ow, I requested further information about the – an explanation of the limits that Dr. [Rao][4] gave in his RFC. I never received – I sent a letter to him to get that further information and I never received a response from him. I'll make another request – a second request to see if he – I can't force him to explain the limits that he described but once again I, you know, it would assist me in further understanding the limits he arrived at.

(R. 1354.) Dr. Rao sent the records within the timeframe after the second letter.

The duty on the ALJ is to make every reasonable effort to develop the record. As related to the Court's 2017 opinion and remand, the Court finds that ALJ did just that. The ALJ sent two letters (albeit a year apart) as required by 20 C.F.R. § 404.1512(b)(1)(i). The problem, here, does not lie in the fact that the ALJ derogated his duty, but rather the meager record. Several consultative examinations were conducted as well. And because Dr. Rao responded, even if in a lackluster way, there was no need for the ALJ to subpoena the records. As the ALJ noted in his opinion: "Although requested by the undersigned, Dr. Rao never identified the particular medical or clinical

---

[4] In the transcript, Dr. Rao's name is written as "Dr. Rawls [PHONETIC]." The context of the ALJ's comment makes clear that he is discussing his letter to Dr. Rao.

10

findings that supported his responses and explained how these findings actually support his assessment of extent of limitations he assessed for the claimant." (R. 1334.) Based on the facts of this case, the Court finds that the ALJ made every reasonable effort to develop and complete the record, only related to the remaining question on the initial remand.

        b. Duty to Develop the Record Based upon Dr. Rao's Letter

In his letter, Dr. Rao states that part of the basis of his opinion that plaintiff cannot work are the "side effects from over 20 medications" plaintiff takes. (R. 2364). This exacerbates an inconsistency in the record that otherwise would have been benign. And, as happened previously, the ALJ's reliance on that inconsistency in making his determination triggers an obligation to clarify the record. The ALJ relied on this inconsistency to afford Dr. Rao's letter little weight. The ALJ states: "[m]oreover, the record contains no reference to issues tolerating medications or unpleasant side effects. Indeed, there is the opposite: references to tolerating medications well (Exhibits 26F, pg 105; 32F, pg 10; 31F, pg 2; 39F)." (R. 1334.) There is a clear inconsistency posed by the record and Dr. Rao's letter, which explains the basis for Dr. Rao's medical opinion.

There is evidence in the record that goes both ways on the medication issue. First, the ALJ relied on the lack of medical side effects experienced by plaintiff to support his finding that plaintiff's symptoms were not as severe as she claimed in his initial opinion. (R. 30.) The ALJ noted:

> While [plaintiff's history of coronary artery disease with stent placement] would normally weigh in claimant's favor, it is offset by the fact that the record reflects that the claimant's cardiac condition is stable with medication, with no reported side effects (1F/19, 2F and 13F/1). The claimant has also undergone conservative pain management consisting of pain medication and physical therapy for mild degenerative disc disease with lumbar strain and foot pain (Exhibit 1F/2, 21F/113,166 and 22F/104). Although the claimant has complained of persistent and worsening osteoarthritic pain, the medical records reveal that medications have provided some relief without reports of adverse side effects (Exhibit 17F and 21F).

(R. 30.) There was no discussion of medical side effects during either hearing, the second hearing pre-dated Dr. Rao's letter which intensified this inconsistency.[5] In her initial symptom questionnaire, plaintiff noted that "lisenpril made my pottasium [sic] to high blood clots was hospitalized melocxicam made me have ulcers." (R. 286.) Treatment notes from plaintiff's hospitalization in 2012, before the January 1, 2013 onset date, note a diagnosis of "Hyperkalemia, likely secondary to acute kidney injury in

---

[5] The hearing was held on February 14, 2019 and Dr. Rao's letter arrived March 8, 2019. (R. 1345, 2364.)

the setting of ACE inhibitor use. . . .At some point, the patient will need to be trialed back on an ACE or ARB given her comorbid factors of congestive heart failure, cardiomyopathy and diabetes." (R. 463, 1195.)

There is also evidence in the record that indicates a lack of side effects. Medical records note that plaintiff is tolerating her medications and indicating "negative" for "medication issues." (R. 1799, 1885, 1893, 1952, 1978, 2327, 2344.) In the descriptions of plaintiff's conditions and treatment plans, there are references about calling the office or emergency services if plaintiff experiences side effects. (R. 32F, 38F.)

The plaintiff claims in her brief that the part of the ALJ's error below was "the ALJ['s] failure to consider [the] side effects of the 25 (plus/minus) medications" that plaintiff was taking. (Pl.'s Reply to Def.'s Mot. to Affirm 3.) Without going as far as plaintiff's brief suggests[6], the Court agrees that the ALJ had a duty to develop the record to resolve this inconsistency because of its significance.

Any further evidence of side effects from medication would be significant because of how it would affect the weight to be

---

[6] plaintiff argues that because it is "patently obvious" that medications have side effects said effects need not be mentioned in treatment notes

afforded to Dr. Rao's opinion by the ALJ. *See* Santiago v. Astrue, 3:10cv937 (CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) ("When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is sufficient."). The inconsistency between Dr. Rao's letter and the treatment notes regarding the side effects is the only basis the ALJ articulates for discrediting Dr. Rao's medical source statement. The only comment the ALJ makes about the original medical source statement is: "In accordance with the remand order, the undersigned sought clarification from Dr. Rao on his May 2015 medical source statement, which has been given little weight (Exhibit 20F)." (R. 1334.) The rest of the discussion is focused on the inconsistency between Dr. Rao's letter and the treatment notes, without any discussion of the statutory factors for discounting a treating physician's opinion.

The Court finds the ALJ had a duty to clarify the record once again. When an ALJ finds the reports to be confusing or insufficiently detailed, the burden is on the ALJ. *See* Gurrola v. Astrue, 706 F. Supp. 2 78, 86 (D.D.C. 2010). And "while it is within the ALJ's discretion to 'determine the best way to resolve [an] inconsistency or insufficiency,' inconsistencies or insufficiencies must be resolved in order to ensure the decision is based on substantial evidence." Alford, 417 F. Supp. at 141

(quoting Hunter v. Berryhill, 373 F. Supp. 3d 393, 398 (E.D.N.Y. 2019). In the second opinion, the ALJ noted the lack of narrative in Dr. Rao's treatment records, referring to them as "electronic boilerplate." (R. 1334) This inherently suggests an insufficiency of detail requiring more.

As was discussed in the original opinion, "[w]hen as here, the ALJ has highlighted alleged inconsistencies or gaps in the medical records it is incumbent upon the ALJ to contact the treating physician and develop the record." (R. 1413); Cummings, 2017 WL 4337103, at *3. The "failure to include findings does not mean they do not exist." (R. Cummings, 2017 WL 4337103, at *5; see also Correale-Engleheart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician."). The creation of a new inconsistency which the ALJ then relied upon to discredit the medical source statement creates an identical problem, requiring an identical solution.

This case is unique in the sense that the ALJ has already contacted Dr. Rao to attempt to correct inconsistencies in the record; but the Court is not

15

convinced that more information is unnecessary here. The Court does not envy the ALJ's position. But the law is clear; the ALJ has an affirmative duty to correct inconsistencies in the record. And here, there is a significant inconsistency between Dr. Rao's opinion and the medical records. "Given that the ALJ perceived conflict and inconsistency between Dr. Rao's treatment notes and his medical source statement, the ALJ had an obligation to further develop the record and investigate the inconsistency." (R. 1415); Cummings v. Berryhill, No. 3:16cv01372 (RAR), 2017 WL 4337103, at *4 (D. Conn. Sept. 30, 2017).

As a result, the ALJ's explanation for discrediting Dr. Rao's opinion unfortunately falls victim to the same problem it faced previously. (*See* R. 1409-11; 1418-20). It appears, although not clearly stated, that the ALJ is relying upon this new inconsistency to discount the medical source statement. As plaintiff notes, the ALJ deleted the references to the records that he relied upon in the initial opinion. (Pl.'s Br. 9-10.) As happened previously, the ALJ cannot use any inconsistency to "'simply reject the physician's opinion.'" (R. 1413); Cummings, 2017 WL 4337103, at *3 (quoting Wade v. Colvin, No. 3:15CV47 (DJS), 2016 WL 1170917, at *9 (D. Conn. March 24, 2016).

16

Once again, because the Court finds that the ALJ did not fulfill his obligation to develop the record, the analysis stops here. "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

## **CONCLUSION**

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #12-1) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #15-1) is DENIED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 22nd day of September 2020, at Hartford, Connecticut.

/s/

Robert A. Richardson
United States Magistrate Judge